Filed 8/12/15 R.V. v. Superior Court CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| R.V.,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>    Respondent;<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Real Parties in Interest. | No. B264207<br><br>(Super. Ct. No. CK91916)<br>(Amy M. Pellman, Judge)<br><br>PETITION FOR EXTRAORDINARY WRIT |

ORIGINAL PROCEEDING: Petition for Extraordinary Writ: Writ Denied.

R.V., in pro. per., for Petitioner.

Office of the County Counsel, Mary C. Wickham, County Counsel, Dawyn R. Harrison, Assistant County Counsel, Sarah Vesecky and Kim Nemoy, Deputies County Counsel for Real Parties in Interest.

# I. INTRODUCTION

R.V., the presumed father (father) of six children ages one to eight years old (the children)[1] filed an extraordinary writ petition pursuant to California Rules of Court, rule 8.452.[2]  He challenges an April 29, 2015, dispositional order that terminated reunification services and set a Welfare and Institutions Code section 366.26[3] permanency planning hearing (setting order) for the six children.  He contends that there were various errors in the proceedings that warrant vacating the setting order.  We conclude otherwise and accordingly deny the petition.[4]

---

[1]    There were four children, three daughters and one son, in the family when the dependency proceedings began in 2012.  Two more children were born to the parents after the proceedings began.  When used herein, the term "children" refers to the children who were in existence at the time of the events being described.

[2]    All further references to rules are to the California Rules of Court.

[3]    All further statutory references are to the Welfare and Institutions Code unless stated otherwise.

[4]    Petitioner filed a motion on August 3, 2015--after briefing was complete and the day prior to scheduled argument--to augment the record.  The motion is denied.
We find the motion was not made within a reasonable time and no good cause for the delay was shown.  (Advisory Comm. Comment to Cal. Rules of Court, rule 8.155 [while a party may request augmentation at any time, "[w]hether the motion is made within a reasonable time and is not for the purpose of delay, however, are among the factors the reviewing court may consider in ruling on such a motion"].)
On the merits, the documents in the record below that Petitioner offers for augmentation are not material to, nor would they assist in a determination of, this writ proceeding.  (*In re M.M.* (2015) 235 Cal.App.4th 54, 59, fn. 4; *Steele v. Internat. Air Race Association of America* (1941) 47 Cal.App.2d 61, 63; see also *People v. Berryman* (1993) 6 Cal.4th 1048, 1070, overruled on other grounds in *People v. Hill* (1998) 17 Cal.4th 800, 823 ["A reviewing court 'focuses on the ruling itself and the record on which it was made. . . . ' [Citation.]".)  As to those documents Petitioner offers that were not lodged or filed in the juvenile court, augmentation would be improper.  (Cal. Rules of Court, rule 8.155(a)(1)(A); *People v. Brooks* (1980) 26 Cal.3d 471, 484.)

## II. FACTS AND PROCEDURAL BACKGROUND

The Los Angeles County Department of Children and Family Services (the Department) filed a section 300 petition on February 17, 2012, and amended the petition on March 28, 2012. The amended petition alleged that the children come within the jurisdiction of the juvenile court because father and S.R. (mother) exposed the children to domestic violence, father exhibited mental and emotional problems, and the parents allowed unrelated adults to use illicit drugs on the property where the family lived.

At a jurisdictional and dispositional hearing on the amended petition, the court sustained the allegations that the children suffered, or there was a substantial risk they would suffer, serious physical harm or illness as a result of the parent's failure or inability to adequately supervise or protect, within the meaning of section 300, subdivision (b). After receiving reports from the Department in evidence, the court found that the parents had a history of engaging in verbal and physical altercations and, on at least one occasion, they threw objects at each other. The court also found that father demonstrated mental and emotional problems, including self-injurious behaviors, which placed the children at risk of harm. Further, the court found the parents established an endangering home environment by allowing unrelated adults to use illicit drugs on the property on January 18, 2012.

Based on these and other facts, the court declared the children dependents of the court. The court ordered physical custody of the children taken from father and placed the children with mother. The court further ordered father to participate in individual counseling, fatherhood parenting classes, a 52-week domestic violence program, and anger management group counseling. The court granted him monitored visits twice per week for two hours each.

Several months after the jurisdictional and dispositional hearing, the Department simultaneously filed a section 342 subsequent petition and, with regard to the fifth child, who was born in February 2013, a section 300 petition. The petitions, as amended, alleged that mother had a history of illicit drug abuse and mental and emotional

3

problems, and that she recently was involuntarily hospitalized due to her erratic behavior and apparent hallucinations. The fifth child's section 300 petition also repeated the allegations in the original petition. On March 24, 2014, after a hearing, the court sustained the petitions. The court removed the fifth child from father's physical custody and all the other children from mother's physical custody. The court ordered the Department to provide father with parenting classes and individual counseling with a licensed therapist to address case issues. The court granted the parents monitored visits for a minimum of nine hours per week.

The parents' sixth child, who was born in August 2014, was also declared a dependent child of the court and removed from the parents' physical custody. The Department placed the sixth child and all of the other children in the home of the maternal grandmother.

On April 29, 2015, the juvenile court held a contested section 366.21, subdivision (f) [twelve month review] hearing—which is the subject of father's writ petition now before us—to address the termination of reunification services and the setting of a permanency planning hearing under section 366.26. Father and mother (both represented by separate counsel) appeared, as did counsel for the county, counsel for the children, and the social worker assigned to the case. The court received in evidence a section 366.21, subdivision (f) report, an interim review report, two last minute information reports the Department prepared for the hearing, the last six months' worth of Title XX's,[5] and two exhibits offered into evidence by mother. The court also heard testimony from mother and the Department social worker assigned to the case. In addition, the court accepted a stipulation by the parties that if father were called to testify, he would stipulate to a statement that he was not present with mother during visitation with the children during or after a spring break visit.

---

[5]     Title XX's refers to the "Delivered Service Log" of all contacts made by the Department's staff in connection with the case.

4

The evidence submitted by the Department and received into evidence indicates father did not comply with the court-ordered case plan. Although the social worker went over the reunification plan with him and provided transportation funds and referrals for court-ordered services, father denied there were any issues of domestic violence or substance abuse and stated he did not need services. He enrolled in a drug treatment program on March 21, 2015; as of April 23, 2015, he had completed two of twenty group meetings. He enrolled in a 26-week online domestic violence program on December 19, 2014, but he did not take exams or receive any progress reports because he did not pay the fee. He did complete a parenting class as ordered, but he did not participate in individual counseling or anger management counseling. Moreover, the record before the juvenile court established that father had been arrested and taken into custody on January 5, 2015, for offering a controlled substance for sale to an undercover police officer (Health & Saf. Code, § 11352, subd. (a)), and was not released until March.

Concerning the visitation component of the reunification plan, the reports received into evidence revealed father visited the children infrequently and sporadically. The court previously ordered the parents to visit the children separately, but the children and the Department reported that father violated the order. The evidence before the court further indicated that the parents continued to have physical and verbal altercations when they were together in the presence of the children.

On the basis of the evidence and testimony before it, the juvenile court found that the return of the children to the parents' custody would create a substantial risk of detriment to the children and that the parents were not in compliance with the case plan. The court further found that there was not a sufficient probability the children would be returned to the parents by the date the maximum reunification period would expire, and that it was in the children's best interest to set a hearing to select a permanent plan. The court explained that the parents did not consistently visit and that they had not "made significant progress in resolving the problem that led to the removal and have not

5

demonstrated the capacity and ability to complete the objectives of the permanent plan."[6] The court accordingly terminated family reunification services and set the matter for a section 366.26 permanency planning hearing.

### III.  DISCUSSION

The writ petition was prepared and filed by father.  He advised this court that counsel sent him the record and he notified counsel he intended to prepare a writ petition on his own.  (Father's Request for Extension of Time, filed on June 18, 2015.)  In an order to show cause issued on July 8, 2015, this court indicated, following review of the petition, that it intended to decide the matter on the merits as it relates to father.

We observe at the outset that a rule 8.452 petition is not a vehicle for the petitioner to relitigate the merits of the proceedings before the juvenile court.  "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court."  (*In re Matthew S*. (1988) 201 Cal.App.3d 315, 321.)  In reviewing the juvenile court's findings and orders, "we look to see if substantial evidence, contradicted or uncontradicted, supports them.  [Citation.]  In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.  [Citation.]"  (*In re Heather A*. (1996) 52 Cal.App.4th 183, 193.)

---

[6]   The court stated:  "[N]either parent had substantially complied with the case plan . . . . [T]his case has a long history.  Unfortunately, neither parent appears to acknowledge the causes that necessitated placement. . . . [¶]  As to father, the father continued not to participate on a regular basis in his programs.  Both parents are not enrolled in programs as of March.  [¶]  Visits have been inconsistent until extremely recently.  And the court doesn't have evidence that the father was not present at the visit.  I have all of these children saying the same thing to the social worker [that father was present at a visit during spring break]."

As set forth earlier in this opinion, the record contains substantial evidence supporting the setting order. "At the 12-month review, if the court does not return the child and finds that there is no substantial probability of return to the parent within 18 months of the original removal order, the court must terminate reunification efforts and set the matter for a hearing pursuant to section 366.26 for the selection and implementation of a permanent plan." (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 249.) Father's participation in verbal and physical altercations, his mental and emotional problems, and his substance abuse issues are well documented. The court ordered him to participate in services designed to resolve these issues so that the children could be returned to his custody, and the Department offered him those services, yet he failed to comply with the court-ordered case plan and visited the children only inconsistently.

Father also presents other contentions of error in the petition, many of which are difficult to decipher and all of which are without merit. Father appears to contend that his attorney rendered ineffective assistance of counsel, but he has not shown that counsel failed to act in a manner to be expected of reasonably competent attorneys practicing in the field of juvenile dependency law nor has he demonstrated prejudice from any asserted error. He also asserts he was deprived of procedural due process, claiming he lacked notice of the proceedings and that the judge was biased against him. However, the record shows father received due process: he personally appeared at the section 366.21, subdivision (f) hearing on April 1 and April 29, 2015; he was represented by counsel; the court granted his request for a contested hearing; and he was given an opportunity through counsel to fully participate in the hearing. (*Ingrid E. v. Superior Court* (1999) 75 Cal.App.4th 751, 756-757 ["due process guarantees apply to dependency proceedings. . . . The essence of due process is fairness in the procedure employed; a meaningful hearing, one including the right to confront and cross-examine witnesses, is an essential aspect of that procedure"].) The record also reveals no bias; the court simply credited information

7

the social worker reported about the case instead of father's version of events recounted in the Department reports.[7]

Finally, even if father could show error, he has not shown, as he must, that any error complained of resulted in a miscarriage of justice. (Cal. Const., art. VI, §13 [no judgment may be reversed unless, "after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice"]; *In re Jesusa V.* (2004) 32 Cal.4th 588, 624-625 [harmless error analysis under *People v. Watson* (1956) 46 Cal.2d 818, 836 applies in dependency cases].) On the record in this case, there is no likelihood that, in the absence of the claimed errors, the court would have continued reunification services rather than setting the matter for a hearing under section 366.26.

---

[7] To the extent father challenges the order detaining the youngest child and other orders and findings made prior to the April 29, 2015 hearing, his challenges are untimely and we have no jurisdiction to review them because he did not timely seek review and the time for seeking review has expired. (*In re Megan B.* (1991) 235 Cal.App.3d 942, 950.)

Any remaining claims in the petition are frivolous or are unintelligible and therefore waived. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.)

## IV. DISPOSITION

The extraordinary relief writ petition is denied.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, J.

We concur:


TURNER, P.J.


KRIEGLER, J.